The opinion of tbe Court was delivered by
O’Neall, J.
Of the two questions,- sent up to this Court by tbe Court of Appeals in Equity, only one will be considered, viz: Bid James Boone Berry take a fee conditional ? For a majority of tbe Court having come to tbe conclusion, that be did not, it is unnecessary to consider the other question, whether a good execu-tory devise can be limited on a fee conditional ?
As far back as 1831, in tbe case of Bedon vs. Bedon, (2 Bail. 246,) I stated my repugnance to the raising of an estate in fee conditional, by implication. Tbe same was repeated in 1833, in Adams vs. Chaplin, (1 Hill, Ch. 282): and, in Edwards vs. Barksdale, (2 Hill, Ch. 198,) in 1835, with tbe assent of my brother, Judge JOHNSON, (thus constituting a majority of the Court of Appeals,) I laid it down, that a fee conditional could not arise ly implication, and if that Court bad not been broken up in 1836, no question would have ever again arisen, about a fee conditional, on any other words than on a direct gift to A. and tbe hens of his body, general or special.
Tbe dissolution of that Court led to tbe re-agitation of many questions, which it bad, with great labour and much care, sifted, examined, and, as was then supposed, settled.
Tbe question of raising an estate of fee conditional, by implication from such words as in England would create a fee tail, was, as might be expected from Judge Harper’s opinion being at variance with those of Johnson and O’Neall, tbe other members of tbe Court, soon again brought under discussion, in tbe tribunal, of which be was a member and an ornament, tbe Court of Appeals in Equity. But it received no adjudication, which gave it *424 tbe force of law, in that Court. It is true, in Whitworth vs. Stuckey, (1 Rich. Eq. 404,) he reiterated the opinion which he had expressed in Edwards vs. Barksdale, Adams vs. Chaplin, and which, as counsel in Bedon vs. Bedon, he had maintained before he went on the Bench, that a devise to A. for life, and if he should die without lawful issue, living at the time of his death, then over, was a fee conditional in A., and that the executory devise was void. It will be seen, however, on reading that case, that this was merely the statement of his own views, and that the decision rested upon the fact, that the purchaser of the estate, at whose instance the bill, quia timet, was filed, was in possession, and had a good marketable title, and had, therefore, no ground of complaint, as was subsequently decided in Vanlew vs. Parr, (2 Rich. Eq. 321.) In McLure vs. Young, (3 Rich. Eq. 559,) the same subject was agitated, and Chancellor JOHNSTON having held on the circuit, that a devise to C. E. for and during her natural life, and at her death to her “lineal descendants,” and in the event of her dying without lineal descendants, to two of her brothers and one sister, was a fee conditional in C. D., and that her husband had an estate by the curtesy, (she having had issue, who survived her,) which exempted him from an account for rent after her death: the case, on a division in the Court of Appeals in Equity, found its way into the Court of Errors, and that Court, at May Term, 1851, held that C. D. did not take afee conditional, and that her son (“ the lineal descendant”) took the estate, after her death, as a purchaser; and, therefore, that her husband could have no estate by the curtesy. The opinion, in that case, was delivered by Chancellor DüNKIN, and certainly, both by its words and authority, goes very far to deny the doctrine, that an estate of fee conditional is ever to be implied in this State.
This glance at the previous cases decided, would, even without the case of Williams vs. Gaston, (1 Strob. 130,) leave us unfettered by decisions, as to the necessity of construing words, which in England would be held to be a fee tail, to be here a fee conditional. That case is a strong authority, in favor of rejecting any *425 such artificial rule, and places tbe argument, in that behalf, very much in advance of anything to be claimed, on the other side.
The whole reasoning (with due deference I speak it) seems to me to be false, which contends for an artificial rule to subvert the intention of the testator. In general a man has the right to dispose of his property as he pleases. He, in this respect, constitutes the law by which it is to be regulated. As only one member, however, of the body politic, it is his duty to make his disposition conform to the law. Hence he cannot, in a devise, create a perpetuity. For this is against the settled policy, and rules of the common law. But, with this exception, I know of no other control, which can rightfully be said to attach to a disposition by devise, in relation to the devisees, and the period at which they may succeed to the enjoyment of iti In England, the rule in Shelley’s case, as it is called, has been made the means of recasting estates, so as more effectually to carry out the intention of the testator. That rule moans no more, than that the words heirs and heirs of the body “ are never words of purchase, and where á devise is to them, as they can only take by descent, the whole estate must be in the ancestor.” Fearne on Rem. 28, note c. By an easy transition, this rule was made, in England, to cover another class of cases, as when thé devise was to A. for his life, and after his death to his issue, and then over. This was adjudged to be a descendible estate, and by the rule in Shelley’s case, the whole estate was in the first taker for life, and then in his issue as tenants in tail, with remainder over. This was all very well in England, both to support their aristocratic institutions, and also to carry out the intention of the testator. Here, however, where the statute de donis never was of force, if we adopt the same artificial rule of construction, we have to apply the rule in Shelley’s case to such a case, as that supposed, and make the estate a fee conditional to descend per formam doni, with the power in the tenant in fee conditional to aliene and incumber, and thus to defeat the descent, and in the very creation of the estate, to prevent the remainder over ; and most probably even an executory *426 devise over, from having effect on account of its remoteness, when attached to such an estate. The case of Izard vs. Izard, (Bail. Eq. 228,) is a perfect illustration of the power of the tenant over the estate in fee conditional, both as to the power to aliene and also to incumber. Mazyclc vs. Vanderhorst, (Bail. Eq. 48,) is full to the point, that a remainder cannot be limited on a fee conditional, and, also, that an executory devise over is, on account of its remoteness, void. If a devise to A. for life, and to his issue living at his death, and, failing such, then over, would be adjudged a fee conditional, who would take the estate as heirs of the body ? The descent is per formam doni and at common law. Our statute of distributions would not, possibly, help such a case. Would it not be a startling result, if the eldest son, as the heir, should take the whole ? These consequences, whether certain or only possible, certainly are enough to make us refuse to adopt any artificial rule which so signally defeats and over-rides the intention. But it is said, we are bound to adopt it, because it is a part of the common law. I deny that it is so. For the purposes of cases like this, it is a rule adopted in England to break down the otherwise certain force of the statute de donis to perpetuate estates. Here, where the statute de donis never existed, how can it be pretended that it is a part of our common law ? We only adopted it, (the common law,) so far as it comported with our situation, and institutions. In this State, since the Act of 1824, we have no necessity to appeal to the rule in Shelley’s case. For unless the devise cuts the estate down to less than a fee, it is to be so regarded. There is, therefore, no artificial rule, which compels us to give a construction, against the plain meaning, to the words of the testator.
What is a fee conditional ? It is such an estate, as is to descend indefinitely, in the line of the first taker. To decide what is the estate of James Boone Perry we must see, whether the devise to him can have this effect. The words are a plain devise to him for life, and at his death the estate is to be vested in his issue male, and in default of such to his issue female surviving him, and if a general failure should be, at the decease of the said James, *427 then to bis cousin John Withingham Sommers, with like limitations, and if there should be a total failure of issue, immediate on the decease of the said John Withingham, then over to James Sommers, his heirs and assigns forever.
It seems to me, that if this were adjudged to be a fee conditional, it would be subversive of every rule regulating executory devises. But before we examine it in this behalf, it would be well to test it by rules especially applicable to fees conditional. If it be a fee conditional, it is alternative, first in the. male line, and, failing that at his death, in the female. ' How could such an estate have indefinite succession ? If a son first took the estate and had a daughter, there would be an end of it in that way. For if there were also a daughter and she had a son, this would not help the matter._ For, says Blackstone, (2 Com. 114,) “ in case of an entail male, the heirs female shall never inherit nor any derived from them, and e converso, the heirs male, in the case of a gift in tail female.” Such consequences would be enough to prevent any implication;
Mr. Fearne (on Rem. 418) tells, us that an executory devise cannot be prevented, or destroyed, by any alteration whatsoever in the estate out of which, or after which, it is limited. If James Boone Perry’s estate be a fee conditional, he could have aliened or encumbered it on the birth of issue, so as to defeat utterly the executory devise over, on his dying without leaving issue him surviving. Such a consequence is enough, one would think, to startle the boldest in applying an artificial rule. Indeed, it is plain, that such a result shows that the whole is an estate to James Boone Perry for life, with a good remainder to his issue, male or female, living at his death, and which words are synonymous here, with children or grand-children, and who consequently take as purchasers, and with a good executory devise over to persons in esse. The rule very plainly is, where the estate is to one for life and to go over, in the event of dying without issue, which must take effect in the compass of twenty-one years after a life or lives in being, that the executory devise is good. (Fearne on Rem. *428 470.) In this case there is no doubt about the period — the whole is limited to the death of the first taker, then the issue were to take, then if there were no issue, the executory devise over took effect. The term “issue” when found in a devise has no such technical meaning, as compels us, ex vi termini, to hold it a word of limitation, and not a word of purchase. For Mr. Fearne (on Bern. 106) tells us, that “issue, in legal construction;, is a word of purchase.” In general whenever it is used, not as the turning point of a devise, and there is a direct gift, with such words as will tie up the meaning, so as to designate a class of children or grand-children to take at the death of the first taker, it is a good word of purchase, and the devise is good. In this will the devise is to James Boone Perry expressly for life. There is no necessity to enlarge this estate. Indeed, I do not perceive how we can, since the Act of 1824. The words show that he was not to have a fee of any kind. It is said, by one of the Court, that a gift to A. and his issue, is a fee conditional without implication. I should be pleased to see that proved. Issue is not a word of descent ; it is only by implying that the testator used it in the sense of “ heirs of the body,” that in England it is ruled to be enough to make an estate tail. The devise to the issue, male or female, is, in the clause of the will under consideration, peculiarly expressed ; the estate at the death of James Boone Perry is declared to be “ vested” in such issue. This is equivalent to a devise to the issue male and his heirs. For to be vested in him, it is necessary it should have just the effect of a devise to him and his heirs. In sucha case, it is clear the words “issue male” are words of purchase. So, too, the words “surviving him” have necessarily the effect to make the terms “ issue, male or female,” words of purchase. For the issue, in whom the estate is to vest, must be alone those, who are found alive, at the death of the first taker, and hence are equivalent to children or grand-children, which are always words of purchase.
But the limitation over is to a person in esse, and is to take effect at the death of the first taker. Beyond all doubt this is a *429 good executory devise. (Fearne on Rem. 468, et seq.) With all these matters clearly and fully ascertained in tbe devise, and thus fully sustaining every part of it, as estates created by devise, not repugnant to any known rule of law, bow can we be called upon to apply an artificial rule, which is to overturn every thing intended by the testator ? I confess I should be slow even to yield to a known, artificial rule having such'an effect; but when I am called on to make it, I should feel I was doing more than the legislator would do, were I to yield to such a call. The only case to be found in the English books of an implied fee conditional is that of Blesard vs. Simpson, 42 Eng. C. L. R. 483, and that was in copyhold. There, too, the implication defeated the executory devise over, and the testator’s intention. That case has no binding effect on us. It is of an estate, copyhold, of which we have nothing like in this State. It is a recent decision, and is, therefore, in no shape to affect us. In this State, as I have shown, we have nothing to bind its in the shape of authority to imply a fee conditional.
On the contrary, the weight of our authority is against it. So, too, reason forbids its adoption/ Most generally it would defeat the intention of testators, which it is our duty to carry out. So that I should never be disposed to make an estate in fee conditional by implication. " Here, however, it is only necessary to say, on the words of the will, the devisee, James Boone Perry, took no such estate.
Dunkin, Ch. and Erost, Withers and WhitNer, JJ. concurred.
Wardlaw, J.
I join five members of the Court in saying, that under the devise in question, James Boone Perry did not take a fee conditional: and so there isa bare majority of the Court in favor of that result: but I do not maintain the leading positions which are assumed in the opinion that has been read by the President of the- Court: indeed, to some of them I am earnestly opposed.
I have not time to write out my- views ; most of them are such *430 as are entertained by tbe larger portion of those members of the Court who dissent from the result, and on some points I may signify my acquiescence in the opinion which one of those members is expected to prepare.
I think that a devise to A. for life and at his death to Ms issue, creates a fee conditional, not by implication, but by express wprds.
The rule in Shelley’s case I regard as a rule of property, wise in itself, long settled, and fully recognized by our own cases.
I can know the intention of a testator only from the words of his testament. Construction is proper to ascertain the meaning of those words, never to discover an intention outside of them. The testator’s own definition, when he has given one, is decisive of the sense in which he used a word. Such definition may some times be found in the context, and some times may be supplied or aided by evidence concerning the condition of the testator, his family, his property, or other matters, which show the circumstances under which a word was used. Rut if there be nothing to show that words were used in a peculiar or extraordinary sense, I understand them in their ordinary sense, and give to technical words technical meaning, to technical phrases a technical effect.
A fair interpretation of the whole will, I think, shows that the devise was not, at the death of James Boone Perry, to his issue male, and in default of his issue male to his issue female, in indefinite succession; but was, in fact, to that particular class of Ms lineal descendants that might be living at his death, the males to be preferred to the females of the class. The special individuals of issue thus indicated would, under our Act of 1824, have taken a fee simple.
I dissent from the intimation made by the President, that an executory devise, to take effect upon an event clearly within the prescribed time, may not be limited upon a fee conditional.